**GREGORY S. SPIZER, ESQUIRE**
ID No. #82435
ANAPOL SCHWARTZ
1710 Spruce Street
Philadelphia, PA 19103
Phone: 215-735-1130
Fax: 215-875-7707
Email: gspizer@anapolschwartz.com

**W. ROGER SMITH, III, ESQUIRE**
BEASLEY ALLEN
218 Commerce Street
Montgomery, AL 36104
Phone: 800.898.2034
334.269.2343
334.954.7555 fax
Email: Roger.Smith@BeasleyAllen.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HUDSON LONG, a Minor, by and** | ) | Honorable Cynthia M. Rufe |
| **Through DEIDRA LONG, his** | ) | |
| **Parent and Natural Guardian** | ) | |
| **3408 Blackberry Lane** | ) | **Civil Action No. 2:12-cv-02595** |
| **Northport, Alabama 35473** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **WOLTERS KLUWER HEALTH, INC.,** | ) | |
| **WOLTERS KLUWER UNITED** | ) | **PLAINTIFF'S BRIEF IN SUPPORT OF** |
| **STATES, INC., PFIZER, INC., and** | ) | **MOTION TO REMAND** |
| **GREENSTONE, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

COMES NOW, HUDSON LONG, through his parent and guardian, DEIDRA LONG, and submits Plaintiff's Brief in Support of Motion to Remand. Plaintiff respectfully requests that

this case be remanded to the Philadelphia County Court of Common Pleas because federal jurisdiction over this matter is lacking.

## I.      **INTRODUCTION**

Defendants Pfizer, Inc., and Greenstone, LLC (hereinafter collectively the "Removing Defendants"), claim that federal jurisdiction exists in this case for the primary reason that there is no possibility that a Pennsylvania court will find that the non-diverse defendant in this case, Wolters Kluwer Health, Inc. ("WKH"), owed any duty to Deidra and Hudson Long.    The Removing Defendants are mistaken.    While it may have had no inherent obligation to do so, WKH undertook to provide consumers with patient education monographs ("PEMs") [1] - which are informational materials intended to educate and warn the consumer about the drug prescribed.    WKH promoted its PEMs as "comprehensive," "up-to-date," "scientifically accurate," and inclusive of all "need to know" medical information.    Once WKH undertook to render such services, WKH assumed a duty to exercise reasonable care in its undertaking. Numerous Pennsylvania cases recognize a legal duty arising from voluntary undertakings. Additionally, WKH assumed duties in providing PEMs by:   (1) professing to comply with the Keystone Guidelines for useful prescription medicine information that apply to its industry, (2) promoting its PEMs as being "comprehensive" and "up-to-date," and (3) contracting with pharmacies to provide drug information directly to consumers in the form of PEMs.   For all of these reasons, every court to consider the issue has held that the non-diverse PEM defendants were not fraudulently joined and have remanded the cases to state court.   Because the Removing Defendants have not (and cannot) disprove even the mere possibility that a Pennsylvania court

---

[1] Throughout this Motion to Remand, Plaintiff shall use the term "PEM" with the intent that it encompass all patient education monographs, patient inserts, warnings, labels, handouts, brochures, drug information, databases, software and/or literature (whatever its form and however described by WKH) that was prepared by WKH to educate, inform or warn consumers, patients, health care professionals and/or pharmacists about the prescription drug Zoloft.

will find WKH assumed a duty to exercise reasonable care in providing PEMs that are truthful, accurate, and complete, Plaintiff's Motion to Remand should be granted.

## II.   RELEVANT PROCEDURAL AND FACTUAL HISTORY

This matter arises out of the birth defects suffered by Hudson Long as a result of his exposure to Zoloft *in utero*. [Complaint ¶ 4.] Zoloft is a prescription medication used to treat depression. Medical evidence and data have long indicated that Zoloft causes congenital birth defects when taken by women during their pregnancies.

WKH is an author of PEMs. [Complaint ¶¶ 39-40, 43-44.] WKH began providing PEMs as a means to profit by purporting to assist pharmacies in complying with state requirements to counsel patients.[2] To that end, WKH's PEMs are intended to be provided directly to pharmacy customers, such as Deidra Long. Customers, like Deidra Long, receive the PEM and other drug information at the time of purchase. The informational handouts prepared by WKH are marketed as being an enhancement to patient safety and as providing comprehensive, authoritative and unbiased information regarding prescription drugs. [Complaint ¶¶ 41, 49.]

The FDA does not regulate PEM authors, such as WKH, primarily because of assurances by the industry participants in the early 1980s through the mid-1990s (when the FDA sought to regulate them), that PEM defendants would "self-regulate" their own conduct with respect to the provision of consumer medication information. As part of the assurances made by the industry, a steering committee was created consisting of healthcare professionals, consumer organizations, voluntary health agencies, pharmaceutical manufacturers, prescription drug wholesalers, and drug information companies, such as WKH. *See* Action Plan for the Provision of Useful Prescription Medicine Information, *Steering Committee for the Collaborative Development of a*

---

[2] Plaintiff alleges that WKH contracted with Deidra Long's pharmacy, Walgreen's pharmacy, to provide patient drug information in various forms – including written PEMs. [Complaint ¶ 42.]

*Long-Range Action Plan for the Provision of Useful Prescription Medicine Information*, p.3 (Dec. 1996)(hereinafter referred to as "Keystone Guidelines") (Exhibit "A").   The steering committee was tasked with developing a comprehensive plan for improving oral and written communications to patients about their prescription medications.  Id.  Ultimately, the steering committee developed, committed to, and promoted the Keystone Guidelines which form the standard for the drug information industry.  Id.

WKH touts its PEMs as delivering "accurate" and "up-to-date" information to patients. [Integrated MedFacts Module, *Wolters Kluwer website*, http://www.medispan.com. (Exhibit "B")].  WKH also proclaims that its PEMs increase patient safety and "provide critical" 'need to know' information."  Id.  WKH claims to have been "performing research with patient data for over 26 years completing well over 20,000 studies during this time." Wolters Kluwer Pharma Solutions, *Source Lx Custom Analytics*, p. 1 (Wolters Kluwer Health, Inc. 2010)(Exhibit "C").

Although the Zoloft label[3] is completely inadequate and fails to truthfully inform patients concerning the risk of birth defects, WKH nevertheless deleted what little information the Removing Defendants included in the product labeling about the risks associated with Zoloft during pregnancy.  [Complaint ¶¶ 121(f), 139, 143; see Zoloft Product Label (Exhibit "D"); Zoloft PEM (Exhibit "E").]

Specifically, WKH deleted from its monograph, among other things, that no adequate studies had been done on pregnant women taking Zoloft to determine the risk to a fetus during organogenesis.   [Complaint ¶ 147.]   WKH also deleted that during animal studies, it was determined that there was a cause and effect relationship between the death of rat pups and

---

[3] Plaintiff contends that Defendants' labeling has never adequately and accurately warned prescribing physicians about the association between Zoloft and birth defects.  In fact, even though other SSRI manufacturers have updated their label to disclose the potential risk, Defendants Pfizer and Greenstone continue to take the position that their drug is not a teratogen.

4

Zoloft exposure during pregnancy. Id. Not only did WKH delete this information from its monograph, it also failed to include key drug information, relevant studies and/or scientific literature showing an association between SSRIs (including Zoloft) and birth defects. [Complaint ¶¶ 139, 147.] As alleged in the Complaint, this information should have been disclosed and that failure was one of the producing causes of Hudson Long's injuries. [Complaint ¶¶ 147-151.]

On January 30, 2008, Hudson Long was born with multiple, congenital birth defects. [Complaint ¶¶ 4, 19.]

On May 10, 2012, Plaintiff filed this action against the Removing Defendants, WKH, and Wolters Kluwer United States, Inc. ("WKUS") in the Philadelphia Court of Common Pleas.

On May 11, 2012, merely one day after the Complaint was filed and before any of the defendants had been served, the Removing Defendants removed this matter to federal court. (See Notice of Removal.)

## III.    LAW CONTROLLING REMAND

### A. LEGAL STANDARD FOR REMOVAL

"Federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue *sua sponte*." Liberty Mut. Ins. Co. v. Ward Trucking Corp., 48 F.3d 742, 750 (3d Cir. 1995). Federal district courts have subject matter jurisdiction over cases that meet the standards for diversity jurisdiction and cases that raise federal questions. See 28 U.S.C. § 1331-1332. If the court determines that a case removed to federal court is not within the original jurisdiction of the district courts, then it must be remanded. 28 U.S.C. § 1447(c). The removing party bears the burden of showing that removal is appropriate. Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985). The Third Circuit has held that any

doubt surrounding a federal court's jurisdiction should be resolved in favor of remand.  See Steel

Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987).    An

improperly removed case will cause significant waste of time, expense, and judicial resources if

it is not promptly remanded.  See Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463

U.S. 1, 103 S. Ct. 2841 (1983)(remanding after trial and appeal to the circuit court of appeals).

Under these guiding principles, this case should be remanded.

**B.  A FINDING OF FRAUDULENT JOINDER IS IMPROPER UNLESS THERE IS A
"CLEAR LEGAL IMPOSSIBILITY" THAT PLAINTIFF WILL PREVAIL AGAINST
THE NON-DIVERSE DEFENDANT.**

To establish that a particular joinder is fraudulent, the removing party bears the "heavy

burden of persuasion" that jurisdiction exists.  Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111

(2nd Cir. 1990).  The Third Circuit has stated that joinder is fraudulent only "where there is no

reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or

no real intention in good faith to prosecute the action against the joined defendants or seek a joint

judgment." 913 F.3d at 111 (quoting Goldberg v. CPC Int'l, 495 F. Supp. 233, 239 (N.D. Cal.

1980)); (see also Slater v. Hoffman-La Roche Inc., 771 F. Supp. 2d 524, 527 (E.D. Pa. 2011)).

In other words, "a finding of fraudulent joinder is usually reserved for situations where recovery

from the forum or non-diverse defendant is a clear legal impossibility.  Fraudulent joinder should

not be found simply because the plaintiff has a weak case against a non-diverse defendant."

Batoff, 977 F.2d at 853 ("A claim which can be dismissed only after an intricate analysis of state

law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of

diversity jurisdiction.").

"In the removal context, the joinder of a party should be deemed fraudulent only if the

claims are wholly insubstantial and frivolous.  The Third Circuit has emphasized that proper

joinder for jurisdictional purposes is a lower bar than would be required for a claim to survive a motion to dismiss or a motion for summary judgment." Slater, 771 F. Supp. 2d at 527; see also Batoff v. State Farm Ins. Co, 977 F.2d 848, 852 (3rd Cir. 1992) ("The inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder.")  A fraudulent joinder claim does not exist unless there is no possibility that a Pennsylvania court would find that Plaintiff's complaint states a cause of action against WKH.

## C.  THE FOCUS OF A FRAUDULENT JOINDER INQUIRY IS THE ALLEGATIONS IN THE COMPLAINT.

Third Circuit authority makes clear that the allegations of the Complaint, each assumed to be true, are the focus of a fraudulent joinder analysis.  Batoff, 977 F.2d at 851-52.  "When evaluating a claim of fraudulent joinder, the Court must focus on the plaintiff's complaint at the time the petition for removal was filed.  In doing so, the district court must assume as true all factual allegations of the complaint." Id.

The Removing Defendants cite In re Briscoe to support this Court considering materials other than the pleadings in its fraudulent joinder analysis.  However, In re Briscoe centered on a statute of limitations defense.  448 F.3d 201 (3d Cir. 2006).  Before permitting consideration of materials other than the pleadings to determine the limitations bar, the Third Circuit held that the statute of limitations does not "truly go to the merits of the plaintiff's claim."  Thus, consideration of limitations issues did not overstep the threshold jurisdictional issues to become a decision on the merits.  Id. at 219.

Therefore, the Removing Defendants attempt to expand the Third Circuit's holding to use evidentiary materials to disprove Plaintiff's claims against WKH on the merits should be denied. See Boyer, 913 F.2d at 111 (quoting Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir.

1983)("If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.").

## D. PENNSYLVANIA LAW APPLIES IN THIS MATTER BECAUSE THERE IS NO TRUE CONFLICT BETWEEN THE LAW OF PENNSYLVANIA AND THE LAW OF ALABAMA.

When conducting a choice of law analysis, courts are to first determine whether "an actual or real conflict [exists] between the potentially applicable laws." Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3rd Cir. 2007). If the laws of the competing jurisdictions are not in conflict, then "no further analysis is necessary" and the Court will apply Pennsylvania law. See, e.g., Teledyne Techs v. Freedom Forge Corp., 902403 (P. Com. Pl., March 7, 1990). See, e.g. Robinson v. Wolters Kluwer Health, Inc., et al., No. Civ. A. 11-5702, 2011 WL 6009980 (E.D. Pa. Dec. 2, 2011). Here, because there is no actual, material conflict between Pennsylvania law and Alabama law, Pennsylvania law will govern.

Both Pennsylvania and Alabama have a long-standing history of recognizing theories of liability based on the assumption of duty of principles formalized under Section 324A of the Restatement (Second) of Torts ("Section 324A"). See Cantwell v. Allegheny County, 506 Pa. 35, 483 A.2d 1350 (1984); see Beasley v. McDonald Engineering Co., 287 Ala. 189, 249 So. 2d 844 (1971). Both Alabama and Pennsylvania recognize that one who acts owes a universal duty to act with care and to avoid foreseeable harm to others. See Probst v. Caldwell Store, Inc., 409 Pa. 421, 427 (Pa. 1963); see Daily v. City of Birmingham, 378 So.2d 728, 729 (Ala. 1979). Both Pennsylvania and Alabama recognize a duty based upon an entity's representations of expertise, skill, or quality. See In re Scheidmantel, 868 A.2d 464, 486 (Pa. Super. 2005); see Hall v. Dexter Gas Co., 277 Ala. 360, 170 So. 2d 796 (Ala. 1964). Both Pennsylvania and Alabama

8

recognize that industry standards, such as the Keystone Guidelines, can form a basis for the standard of care.  See Dallas v. F.M. Oxford, Inc., 381 Pa. Super. 89, 96, 552 A.2d 1109, 1112 (Pa. Super. Ct. 1989); see King v. Nat'l Spa & Pool Inst., 570 So.2d 612, 616 (Ala. 1990).

Simply stated, there is no material conflict between the laws of Pennsylvania and Alabama with respect to the theories set forth against WKH.  Because there is no actual conflict between Pennsylvania law and Alabama law, this Court should conclude that Pennsylvania law applies here.

## IV.  ARGUMENTS AND AUTHORITIES

### A. REMAND IS WARRANTED IF THERE ARE PROCEDURAL DEFECTS UNDERLYING THE REMOVAL

#### 1. 28 U.S.C. § 1446(b) Expressly Forbids Pfizer From Removing This Matter Prior to Formal Service.

The Removing Defendants removed this case to this Court one day after the Complaint was filed and prior to any defendant being served.  Due to the untimely nature of the removal, this matter is due to be remanded.

28 U.S.C. § 1446(b) states in part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days *after the receipt by the defendant*, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." (*emphasis added*).

The Supreme Court has determined that ""[a] named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, *but not by mere receipt of the complaint unattended by any formal service.*"  Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-348 (1999).  Furthermore, this Court has held that a failure to adhere to the proper procedure for removal under 28 U.S.C. § 1446(b) is grounds for remand.  Cherry v.

Lycoming Engines, Civ. A. No. 08-5774 at 4 (E.D. Pa. May 26, 2010)(holding that removal was premature); (see also Campell v. Oxford Elecs, Inc., 07-0541, 2007 WL 2011484, at *2 (E.D. Pa. July 5, 2007)(holding that defendants' "notice of removal was not too late, it was too early," because "removal is not proper until a complaint has been served on the defendants"); Lane v. CBS Broad. Inc., No. 08-0777, 2008 WL 910000, at 6-8 (E.D. Pa. Apr. 02, 2008) (finding removal premature and remand appropriate because the plaintiff had not yet served a complaint).

## 2. The Forum Defendant Rule Cannot Be Nullified by a Defendant's Race to Remove Prior to Service.

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ..., to the district court for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).  28 U.S.C. § 1441(b), however, provides a restriction on removal in some diversity cases known as the "forum defendants rule."  See Blackburn v. United Parcel Service, Inc., 179 F.3d 81 (3d cir. 1999).  Specifically, section 1441(b) provides, in part, that

> [a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or law of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable *only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.*

28 U.S.C. § 1441(b)(emphasis added).

The Removing Defendants' Notice of Removal suggests that Plaintiff cannot avail himself of the forum defendant rule because the forum defendant, WKH, had not been properly served at the time of removal.  [Notice of Removal ¶¶ 9, 14.]  Despite the fact that the time period for service under Pennsylvania Rules of Civil Procedure has not expired, the Removing Defendants suggest that the statutory language of the forum defendant rule may be turned into a

race between the plaintiff to serve the in-state defendant and the non-forum defendant to remove before the plaintiff can make service.  Such an interpretation of § 1441(b) has been rejected.  See Miller v. Piper Aircraft, Inc., Civ. A. No. 08-5961, 2009 WL 1033585, *3 (E.D. Pa. April 14, 2009)(citing Allen v. GlaxoSmithKline PLC, 2009 WL 2247067, at *19-20, 2008 U.S. Dist. LEXIS 42491(E.D. Pa. May 30, 2008)(court refused to allow GSK to remove a case prior to service in order to claim it was not properly served under Section 1441(b)); see also In re Avandia Mktg., Sales Practices & Prods. Liab. Litig., 624 F. Supp. 2d 396 (E.D. Pa. 2009)(Rufe, J.)(rejecting that section 1441(b) embodies an "unfair 'race to remove" by technologically sophisticated non-forum defendants"); see also Cherry, Civ. A. No. 08-5774 (E.D. Pa. May 26, 2010)("A blind application of the 'properly joined and served' language would permit unserved defendants to subvert the forum defendant rule – and deny the plaintiff's choice of forum – by monitoring state court dockets and removing an action to federal court before the sheriff can effect service.")

Here, the Removing Defendants removed this case one day after it was filed.  Efforts have been underway since filing to have all defendants served.  The statutory time period within which service must be accomplished has not yet expired.  The Removing Defendants suggest that the statutory language of the forum defendant rule may be turned into a race between the plaintiff to serve the in-state defendants and the non-forum defendant to remove before the plaintiff can make service.  Allowing removal under these circumstances would lead to an absurd result, demonstrably at odds with the language of the statute and Congressional intent.  See Sullivan v. Novartis Pharms. Corp., 575 F.Supp.2d 640, 643 (D.N.J. 2008)("As a matter of common sense, the court is confident, beyond any doubt, that Congress did not add the 'properly joined and served' language in order to reward defendants for conduction and winning a race,

which serves no conceivable public policy goal, to file a notice of removal before the plaintiffs can serve process."); see also Walborn v. Szu, et al., Civ. A. No. 08-6178, 2009 WL 983854, at *6 (D.N.J. April 7, 2009)(the court admonished against the gamesmanship wherein the non-forum removing defendant is rewarded for filing a notice or removal before the plaintiffs could serve process on the forum defendant).

**B. THE REMOVING DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN OF SHOWING THAT THE AMOUNT IN CONTROVERSY IN THIS MATTER EXCEEDS $75,000, AS REQUIRED BY 28 U.S.C. § 1332.**

In order to accomplish removal pursuant to 28 U.S.C. § 1332, the Removing Defendants must show that the damages sought exceed the jurisdictional amount in controversy threshold of this Court and that the parties are diverse in citizenship.   28 U.S.C. § 1332.   In the removal context, where damages are unspecified (as in this case), the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence.   The Removing Defendants argue that removal is proper because the amount in controversy exceeds $75,000. [Notice of Removal ¶ 3.]   The Removing Defendants' argument fails as Plaintiff's Complaint does not specify any specific amount in controversy.   The possibility that the damages may aggregate to more than the jurisdictional amount does not, in itself, show that the amount in controversy exceeds the jurisdictional amount by a preponderance of the evidence.   See Mercante v. Preston Trucking Company, Inc., Civ. A. No. 96-5904, 1997 WL 230826.   (E.D. Pa. May 1, 1997).

**C. WKH IS A NON-DIVERSE DEFENDANT WHICH DEFEATS DIVERSITY JURISDICTION.**

Pursuant to 28 U.S.C. § 1332, this Court lacks diversity jurisdiction if one or more of properly joined and served defendants in the action is a citizen of the State in which the action has been brought. *See* 28 U.S.C. § 1332; 28 U.S.C. § 1441(b).   Plaintiff's Complaint identifies at

least one Pennsylvania defendant – WKH.  As stated in Plaintiff's Complaint, at all times material to this action, WKH maintained its principal place of business in Pennsylvania as determined under the "nerve center" test set forth in Hertz Corp. v. Friend, 130 S.Ct. 1181 (2010). [Complaint ¶ 14.]  In addition, WKH regularly solicits and transacts business, receives substantial revenues, sells products and performs services, and carries a continuous systematic part of its business in Pennsylvania and in Philadelphia County.  [Complaint ¶ 14.]

The Removing Defendants do not dispute that WKH is a citizen of Pennsylvania, the state in which this action was brought.   [Notice of Removal ¶ 7.]   Thus, putting aside the Removing Defendants gamesmanship with regard to section 1441(b), jurisdiction is lacking absent a showing that WKH was fraudulent joined in this matter.  See Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3rd Cir. 1992)("A district court must consider a number of settled precepts in ruling on a petition to remand a case to state court for lack of diversity jurisdiction. When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined.")

## D. OTHER COURTS HAVE REJECTED SIMILAR FRAUDULENT JOINDER ARGUMENTS WITH RESPECT TO PEM DEFENDANTS.

At least seven different opinions, originating out of three separate courts, have remanded cases involving similar allegations against non-diverse PEM Defendants. See Order, Slater v. Hoffman-La Roche, Inc., et al., Civ. A. No. 10-6956 (E.D. Pa. March 24, 2011)(Exhibit "F"); Robinson,  2011 WL 60009980 (Exhibit "G"); Memorandum Order, Farmer v. Wyeth, et al., Civ. A. No. 11-348, 2011 WL 2462066 (E.D. Missouri, June 17, 2011)(Exhibit "H"); Memorandum Order, Lyons v. Wyeth, et al., Civ. A. No. 11-365, 2011 WL 2462071 (E.D. Missouri, Eastern Division, June 17, 2011)(Exhibit I); Memorandum Order, Ferguson v. Wyeth,

et al., Civ. A. No. 11-00360 (E.D. Missouri, Southeastern Division, June 8, 2011)(Exhibit "J");

Memorandum Order, Franzman v. Wyeth, et al., Civ. A. No. 11-00362, 2011 WL 3847420 (E.D.

Missouri, Eastern Division, August 26, 2011)(Exhibit "K"); Memorandum Order, Nicely v.

Wyeth, Inc., et al., Civ. A. No. 11-338, 2011 WL 5024572 (E.D. Missouri, Eastern Division,

June 17, 2011)(Exhibit "L"); Memorandum Order, Lawson v. Wyeth, et al., Civ. A. No. 11-364,

2011 WL 3608025 (E.D. Missouri, Eastern Division, Aug. 16, 2011)(Exhibit "M"); Newby v.

Wyeth, Inc., et al., Civ. A. No. 11-00339, 2011 WL 5024572 (E.D. Missouri, Eastern Division,

October 21, 2011)(Exhibit "N").

In Slater, Judge J. Dubois expressly addressed the issue before this Court. 771 F.Supp.2d

at *528. Judge Dubois held that a healthcare professional that otherwise did not have a duty to

warn but undertook to provide a detailed warning may voluntarily assume a duty to provide

complete warnings and information. Id. (citing Cottam v. Pharmacy, 436 Mass. 316, 323, 764

N.E. 2d 814, 823 (2002). "[A] Pennsylvania state court could find that [a company] has

assumed a duty to a plaintiff based on a voluntary provision of monographs containing

information and warnings about [a drug]." Id. As a result of the defendant's failure to establish

fraudulent joinder, the case was remanded to state court.

In Robinson, the court held that the defendant failed to establish that it was legally

impossible for the plaintiffs to prevail against the PEM Defendant. "Since we have already

determined that it is not a legal impossibility that a Pennsylvania court will find that the WK

Defendants owed a duty to Plaintiff, we find that Plaintiff's joinder of the WK Defendant was

not fraudulent." Robinson, 2011 WL 60009980 at *7. Because the PEM Defendant failed to

demonstrate that there was no possibility that the court could find that WK Defendants assumed

a duty to the Plaintiff, the court remanded the matter back to the state court.

14

The Removing Defendants reliance on <u>Cheatham</u> and <u>Rivera</u> is misplaced.  First, in the summary judgment context, these cases held that California and Arkansas law did not impose a duty of care on PEM providers under "the facts of those particular cases."  Thus, the federal courts held that <u>Cheatam</u> and <u>Rivera</u> did not establish the absence of a duty in a case governed by the laws of other states.  Second, the federal courts noted that the plaintiff's assertions of a duty on a PEM provider based on (1) voluntary undertaking principles, (2) the Restatement of Torts (Second) § 324A, and (3) the PEM industry's own standard of care statement a reasonable basis for a duty that had not been disproven by the PEM provider.  The same is true of Plaintiff's claims against WKH in the case at bar.

In the present case, the Removing Defendants have failed to demonstrate or establish that Plaintiff's claims against WKH are fraudulent.  Thus, this case, like <u>Robinson</u> and <u>Slater</u>, should be remanded to state court.

## E. THIS MATTER SHOULD BE REMANDED BECAUSE WKH WAS NOT FRAUDULENTLY JOINED.

The cornerstone of the Removing Defendants' fraudulent joinder argument is their contention that WKH owed no duty to Plaintiff.  [Notice of Removal ¶ 26.]  The Removing Defendants are mistaken.  Where an actor (1) voluntarily undertakes the task of providing written drug information and warnings, (2) professes to adhere to industry standards regarding drug warnings, (3) enters a contract imposing obligations regarding the provision of drug warnings, and (4) promotes particular characteristics of its drug warnings (each of which WKH has done here), Pennsylvania law provides that a duty will be imposed on that actor.  Because there exists at least the possibility that WKH owes a duty to Plaintiff under Pennsylvania law, this Court should join with every other court to consider the issue and hold that WKH is not fraudulently joined.

15

1. **WKH Has a General Common Law Duty to Exercise Ordinary Care In Its Business Undertakings.**

WKH is subject to a "social" or "universal" duty of care under which every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury. Probst v. Caldwell Store, Inc., 409 Pa. 421, 427 (Pa. 1963)("It is a primary social duty of every person to take thought and have a care lest his action result in injuries to others"); St. Clair v. B & L Paving Co., 270 P. Super. 277 (Pa. Super. Ct. 1979)("Those who undertake an activity pursuant to a contract have both a self-imposed contractual duty and a 'social' duty imposed by the law to act without negligence.") The scope of the duty owed is defined by the foreseeability of the injury. Russo v. Pittsburgh R. Co., 164 Pa. Super. 396, 400 (Pa. Super Ct. 1949)("The reasonably foreseeable risk of harm defines the orbit of duty to be imposed.")

In the case at bar, Plaintiff has alleged that WKH owed a common law duty of care. [Complaint ¶ 40.] Under that common law duty, when WKH undertook to author and provide consumer drug information regarding Zoloft, it had a societal obligation to take care that consumers would not be harmed by their foreseeable reliance on the PEMs representations. WKH failed in this obligation. Thus, it is at least possible that WKH will be found liable under common law principles for its failure to exercise ordinary care in its provision of Zoloft warnings.

2. **Having Undertaken to Warn Consumers of Zoloft's Dangers, WKH Assumed a Duty to Exercise Reasonable Care in Making Those Warnings.**

Pennsylvania courts recognize that one may assume a duty by a course of conduct. Riddle Memorial Hospital v. Dohan, 504 Pa. 571, 576-577, 475 A.2d 1314, 1316 (1984); Glick v. Martin and Mohler Inc., 369 Pa. Super. 428, 433-434, 535 A.2d 626, 628 (1987). Indeed, Pennsylvania has adopted the Restatement (Second) of Torts § 324A which provides:

> One who undertakes . . . for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by another to a third person, or (c) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 324A.   See DiMarco v. Lynch Homes-Chester County, Inc., 525 Pa. 558, 560 (Pa. 1990)(affirming the Superior Court's ruling finding a basis for liability under Restatement Section 324A).

Several Pennsylvania courts have construed the Restatement provisions as creating a legal duty where none would otherwise exist.  See Boyanoski ex rel. Estate of Kane v. Gould, Inc., 1999 WL 33226460 (9 Pa.Com.Pl., September 27, 1999); Henry v. First Federal Savings & Loan Association, 313 Pa. Super. 128, 134 n.3, 459 A.2d 772, 775 n.3 (1983).  Moreover, even industries otherwise shielded by the learned intermediary doctrine can assume a duty based on their voluntary undertakings.  See Cottam, 436 Mass. 316, 323("A pharmacy, like any other person or entity, may voluntarily assume a duty that would not otherwise be imposed on it, and thus may voluntarily assume a duty to provide information, advice or warnings to its customers.")

In the present case, Plaintiff has alleged facts and established, pursuant to Restatement (Second) of Torts § 324A, that WKH undertook and assumed a duty to exercise reasonable care in providing drug warnings and information regarding the risks of Zoloft.  Having undertaken a duty of care to Plaintiff, WKH had an obligation to discharge that duty in a non-negligent manner.

Because it cannot be said as a legal certainty that Plaintiff has no possibility of prevailing on his claims against WKH, Plaintiff's Motion to Remand should be granted.

**3.  It Is Possible That a Pennsylvania Court Will Find WKH Has a Duty to Comply With the Keystone Guidelines For Its Industry.**

WKH professes to comply with the "Keystone Guidelines" See Wolters Kluwer's website, http://www.medi-span.com/is-your-system-up-to-date.aspx (offering Patient Education Database: Action Plan format-complaint monographs")(Exhibit "O"); Clinical Resource@Ovid version 1.2.0, p.2 (2006)("Patient Information Handouts Comply With Keystone Action Criteria")[4](Exhibit "P").   The Keystone Guidelines were developed in response to a congressional mandate that relevant health agencies, professions and companies (including drug information database companies such as WKH) work to improve oral and written communications to patients regarding their prescription medications.  See Keystone Guidelines, p. 3.

The Keystone Guidelines set forth the duty to which WKH is subject when providing drug information, including the written prescription information must be: (1) scientifically accurate, (2) unbiased,  (3) sufficiently specific and comprehensive, and (4) timely and up-to-date.  Id. at 16.

Under Pennsylvania law, established industry standards, such as the Keystone Guidelines, are evidence of both a duty and the relevant standard of care.  See, e.g. Dallas v. F.M. Oxford, Inc., 381 Pa. Super. 89, 96, 552 A.2d 1109, 1112 (Pa. Super. Ct. 1989)(noting that "our own Superior court has condoned the admission of standards, be it through expert testimony or the introduction of private and governmental regulation regarding a particular business or

---

[4]Plaintiff understands that WKH provides a variety of different drug information products to pharmacies.  However, even if the products referenced in this section were not the precise ones licensed to Deidra Long's particular pharmacy they still offer some support for Plaintiff's allegation that WKH purports to comply with the Keystone Guidelines.  Indeed, it would be odd for WKH to represent some patient information as compliant with industry guidelines while simultaneously intending other patient information to be non-compliant.  Moreover, WKH has not disclaimed intent to have its drug information comply with the Keystone Guidelines.  At the very least, the possibility that WKH assumed a duty to provide patient information in accordance with the standards set for the industry by the Keystone Guidelines.

industry"); citing Wood v. Smith, 343 Pa. Super. Ct. 547, 495 A.2d 601 (1985)(instructions on government and industry standards were properly admitted). Thus, Pennsylvania law recognizes the use of industry standards as evidence of the relevant standard of care and that a violation of such standards is evidence of negligence.

WKH professed to follow the Keystone Guidelines and assumed a duty of care to ensure that the PEMs and other drug information it provided to Deidra Long, her physicians, and her pharmacists was scientifically accurate, comprehensive, and up-to-date. WKH should be held to a duty of reasonable skill in the exercise of its vocation given its claims of expertise and adherence to industry standards. It is at least possible that WKH assumed a duty to comply with the very FDA guidelines and industry standards that it professes to follow.

### 4. It Is Possible That a Pennsylvania Court Will Find WKH Owed a Duty to Plaintiff on WKH's Contractual Undertakings.

Finally, under Pennsylvania law, it is well established that parties to a contract have a duty to perform their contractual undertakings in such a manner as to avoid injury to third parties. Farabaugh v. Pa. Tpk Comm'n, 590 Pa. 46, 69 (2006)("It has long been the law of this Commonwealth that a contracting party may owe a duty, imposed by law and society, to perform its contractual obligations in such a manner as to avoid injury to third parties.") Such duty does not arise directly from the contract itself, but is imposed by law as a result of the nature of the undertaking in the contract. Cantwell v. Allegheny County, 506 Pa. 35, 40, 483 A.2d 1350, 1353 (1984).

Here, WKH contracted with Walgreens, Deidra Long's pharmacy, to provide patient drug information in various forms, including in a written form intended to be provided to customers at the time a filled prescription is picked up. [Complaint ¶¶ 42-43.] WKH assumed a duty to

perform its contractual undertaking in such manner as to avoid causing injury to patients who relied on its PEM, including Deidra Long.  [Complaint ¶46.]

Further, any argument that WKH is excused from its duty of care because WKH has no relationship with Plaintiff is without merit.   Under Pennsylvania law, privity of contract is not a prerequisite for tort action. Farabaugh, 590 Pa. at 78; See Evans v. Otis Elevator Co., 403 Pa. 13, 19 (Pa. 1961)("The orbit of [Defendant's] duty to third persons is measured by the nature and scope of his contractual undertaking . . .regardless of any privity of contract.")  Therefore, the lack of a direct contractual relationship between WKH and Plaintiff does not make it impossible for Plaintiff to prevail against WKH.

**5. Having Promoted Its PEMs As Being Accurate, Up-to-Date, and Inclusive of All Information Consumers Needed to Know About the Safety of a Prescription Drug, WKH Assumed a Duty to Provide PEMs That Complied with Its Own Representations.**

It is well established that when someone holds himself out as having a particular expertise, the law will require him to perform with a standard of care commensurate with the claim of expertise. See, e.g., In re Scheidmantel, 868 A.2d 464, 486 (Pa. Super. 2005).  Thus, where a defendant, such as WKH, advertises that it will perform specific functions, such as monitoring medicines and providing safety warnings about those medicines that are current and include critical information, courts have held that the defendant "voluntarily assumes a duty of care with respect to the advertised system."  Cottam, 436 Mass. at 323, 764 N.E.2d at 823; Somerset Sav. Bank v. Chicago Title Ins. Co., 420 Mass. 422, 430-431 (1995)(denying motion for summary judgment where the defendant's advertising professed knowledge of local laws and practices which could be fairly interpreted as an assurance that matters of local law would be bought to the plaintiff's attention); In re Scheidmantel, 868 A.2d 464 (Pa. Super. 2005)(holding

that companies advertising pamphlet indicating that it had special expertise in managing trusts imposed a duty to perform trust management with superior skill.)

In the present case, WKH advertised its patient-directed drug information as being "accurate," "up-to-date," and "unbiased."[5] Integrated MedFacts Module, www.medi-span.com/integrated _–medfacts-module.aspx. (Exhibit "B"). WKH also advertises its drug information as providing the "critical" and "need–to-know" information about prescription drugs. Id. Having assured the public that its PEMs were current, accurate, and inclusive of the information a consumer would "need-to-know" about a prescription drug, WKH assumed a duty to provide PEMs that adhered to those standards.

6. **The Removing Defendants Rely on Three Non-Pennsylvania, Non-Pleading Based Cases in an Attempt to Demonstrate That It Is Impossible for This Court to Find a Duty on Behalf of WKH.**

The Removing Defendants argue that a publisher of PEMs does not have a duty to warn dangers of the dangers associated with prescribed medications [Notice of Removal ¶27].   In an effort to establish fraudulent joinder by proving that there is no possibility that this Court will find a duty on behalf of WKH, the Removing Defendants rely on three (3) non-Pennsylvania cases:  Cheatham v. TEVA Pharmaceuticals USA, 726 F. Supp. 2d 1021 (E.D. Ark. May 20, 2010); Wilkow v. Drug Fair, Inc., No. L-2137-98, 1999 WL 33645139 (N.J. Super Ct. Law Div. Oct. 22, 1999); and Rivera v. First Databank, Inc., 115 Cal.Rpts.2d 1, 8, (Ct. App, 2010).  These opinions are distinguishable from the present case and do not support a finding of fraudulent joinder.

---

[5] This Court can properly take judicial notice of WKS's statement on their official websites.  See e.g., LaBella Winnetka, Inc. v. Vill. of Winnetka, 628 F.3d 937, 944 (7th Cir. Ill 2010)(taking judicial notice of contents of defendant's official website), Patsy's Italian Rest. Inv. V. Banas, 575 F.Supp.2d 427 (E.D.N.Y. 2008) ("It is generally proper to take judicial notice of articles and Web sites published on the internet.").

First, it is important to note that none of the above mentioned decisions relied upon by Defendants, were decided on a Motion to Remand, but were decided much later in the litigation process under a different legal standard than the fraudulent joinder, "impossibility" standard. Rivera was decided on a motion to strike under California's Anti-SLAPP statute; meanwhile, Cheatham and Wilkow were cases decided on summary judgment. Consequently, the Cheatham, Wilkow, and Rivera courts were concerned with whether the plaintiffs had offered sufficient proof to raise a question of fact regarding the PEM provider's duty. See Cheatham, 726 F. Supp. 2d at 1023. Any analysis of fraudulent joinder under a different legal standard would be insufficient and misleading. It is possible that the respective courts in these cases would have reached a different holding under the proper fraudulent joinder inquiry and/or standard.

Second, unlike Plaintiff's allegations in the present case, the rulings in Cheatham, Wilkow, and Rivera did not address the significance of Section 324A, the Keystone Guidelines for the provision of PEMs, the contractual obligations of the PEM provider, or public assurances regarding the quality and characteristics of the drug warnings as a basis for imposing a duty on WKH. Consequently, the failure to find a duty in Cheatham, Wilkow, and Rivera cannot carry Defendants' burden to disprove any possibility of a duty being imposed.

Finally, Cheatham, Wilkow, and Rivera each involve a distinguishable factual context and record. For instance, in Cheatham, 726 F.Supp. at 1023, the plaintiff's wife had received a two-page informational printout from her pharmacy when she filled her prescription. In granting WKH's summary judgment motion, the Eastern District of Arkansas relied on a specific factual showing that does not exist at the pleadings stage in the present case; specifically, evidence indicating WKH merely undertook to provide drug information to the pharmacy, USA Drug Express, and not directly to the plaintiff. Id. at 1024. The court specifically noted that the

22

plaintiff failed to offer any evidence in support of his allegation that WKH had undertaken to provide extensive to the patient herself.  Id.   While a summary judgment may have been warranted where no proof existed that the PEM was directed at the injured plaintiff, such holding is not applicable at the pleadings stage.   Based on the Cheatham court's opinion, it is possible a duty could exist; however, such duty must be proven sufficiently.   Such possibility suffices to establish that WKH is not fraudulently joined.

**F. THE LEARNED INTERMEDIARY DOCTRINE DOES NOT APPLY TO IMMUNIZE WKH, A PEM PROVIDER, FROM ALL POSSIBILITY OF BEING HELD LIABLE TO PLAINTIFF.**

The Removing Defendants argue that WKH cannot be held liable because, as a PEM provider, WKH is afforded protection under Alabama's "learned intermediary rule."   [Notice of Removal ¶ 30.]  Such argument is without merit.  First, the learned intermediary doctrine is a merits-based defense that is not appropriate for determination on a motion to remand.  Second, drug information companies, such as WKH, serve an entirely different role and function than pharmacies such that the rationale for applying the learned intermediary rule does not apply.  Third, even if WKH was the equivalent of a pharmacy, that fact does not render the finding of a duty on WKH an impossibility.  Even pharmacies may assume a duty based on their voluntary undertakings.  Finally, no court has held that the learned intermediary doctrine applies to PEM providers. For each of these reasons, Plaintiff's Motion to Remand should be granted.

**1. The Learned Intermediary Doctrine is a Defense on the Merits That Cannot Support a Finding of Fraudulent Joinder at the Outset of this Case.**

As an initial matter, the Removing Defendants' assertion of the learned intermediary defense as a shield against liability cannot support a finding of fraudulent joinder.  See Boyer, 913 F.2d at 113 ("[W]here there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were

fraudulently joined based on its view of the merits of those claims or defenses.  Instead, that is a merits determination which must be made by the state court."); see Kline v. Pfizer, Inc., 2008 WL 4787577 (E.D. Pa. Oct. 31, 2008)(rejecting the learned intermediary doctrine at motion to dismiss stage); see Leonard v. Taro Pharms. USA, Inc., Case No. 10CV1341, 2010 WL 4961647 (W.D. Pa. Dec 2, 2010)(holding that the learned intermediary doctrine against liability may have "merit further down the litigation road" but that they could not support dismissal on a motion to dismiss at the outset of the litigation).  For the learned intermediary doctrine to apply and absolve WKH of liability, it is necessary for the Court to hold that the Removing Defendants gave adequate warnings to physicians.  Thus, the learned intermediary doctrine is an issue that goes not only to the Court's jurisdiction but also to the merits of Plaintiff's claims for relief.  As such, it cannot be the basis of a finding of fraudulent joinder.

Moreover, even if this Court were inclined to make a merits-based determination regarding the adequacy of the Removing Defendants' warnings as part of the remand inquiry (which is should not do), the fraudulent joinder standard requires that all contested issues be resolved in Plaintiff's favor.  West v. Marriott Hotel Services, Inc., 2010 WL 4343540 (E.D. Pa. 2010).  Here, Plaintiff has alleged that the warnings provided by the Removing Defendants were inadequate to warn Deidra Long's physicians regarding the known dangers of Zoloft. [Complaint ¶¶ 35, 36, 37(j), 55, 56.]  Thus, for purposes of Plaintiff's Motion to Remand, the question of whether the Removing Defendants' warnings to health care professionals were adequate must be decided in the negative.  Where a manufacturer fails to communicate an adequate warning to the physicians, the learned intermediary doctrine will not serve as a bar to liability. Brown v. SmithKline Beecham Corp., 2009 WL 1708078 (E.D. Pa. 2009).

### 2. The Function, Intent, and Practices of a Drug Information Company Such As WKH Are Entirely Different and Distinct From Those of a Pharmacy.

24

WKH is not a pharmacy.  The commonly invoked rationale for not imposing a duty to warn on pharmacists is that requiring pharmacists to provide drug warnings would insert them into the middle of the doctor-patient relationship without the physician's knowledge of the patient or medical expertise.  As typically applied, the learned intermediary doctrine shields pharmacies from liability for not providing warnings to consumers that are better directed by physicians.  Instead, it allows pharmacists to focus on the core task of their business:  dispensing prescription medications.  But that is not the issue with WKH.  WKH is not looking to the learned intermediary rule to excuse its inaction.  WKH has already acted to insert itself between the physician and the plaintiff, and the core of WKH as business is the actual provision of drug warnings to consumers.  Thus, the rationale for applying the learned intermediary rule to pharmacists does not apply to WKH.  WKH is looking to the learned intermediary defense to immunize it from liability for voluntarily coming between patients and their physicians and negligently performing a profit-making venture.  The learned intermediary doctrine has never been applied for this purpose.

### 3. The Learned Intermediary Doctrine Does Not Protect From Liability For Voluntary Undertakings.

Even if the learned intermediary rule applied to PEM providers, it would not shield them from a duty in connection with their voluntary undertakings.  That is, even for pharmacists, the learned intermediary has not been applied in the manner WKH requests.

> Although we adopt the "learned intermediary" doctrine. . . with respect to the ordinary pharmacist-patient relationship wherein the pharmacist merely fills the prescription as ordered by the physician, *we decline to extend the doctrine to those cases in which the pharmacy is disseminating information concerning the properties and efficacy of a prescription drug.*  To extend the defense to the facts of the instant case to insulate the pharmacy from the consequences of its affirmative decision to distribute information and instructions contained that provide direction to the patients in a patient package insert is without legal

justification.   Therefore, we decline to hold as a matter of law that the "learned intermediary" doctrine precludes a pharmacy from being held liable for breach of express warranty when it provides a package insert that could provide the basis for such a warranty.

McNichols v. Johnson & Johnson, 461 F.Supp. 2d 736 (S.D. Ill., 2006) (quoting Rite Aid Corp. v. Levy-Gray, 391 Md. 608, 894 A. 2d 563, No. 61, Sept. Term, 2005, 2006 WL 584637 (Md. 2006).   Where an actor voluntarily and independently undertakes the task of providing written drug information and warnings that are different from those produced by the manufacturer, as WKH has done here, it is not excused from the need to exercise due care in that undertaking by the learned intermediary rule.   Sanderson v. Eckerd Corp., 780 So. 2d 930, 931-32 (Fla. Dist. Ct. App. 2001)(holding that the "voluntary undertaking doctrine" applies to pharmacists); Frye v. Medicare-Glaser Corp., 605 N.E.2d 557, 560 (Ill. 1992)(limiting the voluntary duty to the extent of the undertaking where pharmacist assumed duty to place their own labels on container); Baker v. Arbor Drugs, Inc., 544 N.W. 2d 727, 731 (Mich. Ct. App. 1996)(holding that a pharmacy undertook a duty to use a computer program that detected harmful interactions must use it with due care.); Lasley v. Shrake's Country Club Pharmacy, 880 P.2d 1129 (Ariz. Ct. App. 1994)(holding it was a jury question whether pharmacy owed a duty to customer to warn about drug's adverse side effects).

Plaintiff is unaware of any opinion (and the Removing Defendants have cited none) applying the learned intermediary doctrine to PEM providers like WKH.   That is, no court has held that companies seeking to profit by providing inadequate drug information directly to customers should be shielded from liability under the learned intermediary doctrine.   Given that there is no authority in Pennsylvania (or any other state) applying the learned intermediary doctrine in this context, the question of the doctrine's application to WKH must be resolved in Plaintiff's favor.   Thus, Plaintiff's Motion to Remand should be granted.

26

## G. THE POSSIBILITY OF LIABILITY ON THE PART OF WKH IS NOT PRECLUDED BY THE FIRST AMENDMENT.

Whether PEMs constitute protected speech is a contested factual issue not proper for determination on the pleadings. <u>Robinson</u>, 2011 WL 6009980 at *25 (" We agree with Plaintiff that a determination of the merits of a possible First Amendment defense is improper [on a motion to remand]"); <u>Virgin Enterprises Ltd. v. American Longevity</u>, 2001 WL 34142402 (S.D.N.Y., 2001)(finding First Amendment inquiry improper in context of motion to dismiss); <u>Castrol, Inc. v. Pennzoil Company</u>, 987 F.2d 939, 949 (3d Cir.1993); <u>U.S. v. Bell</u>, 207 F. Supp. 2d 940, 943 (S.D.Iowa, 2002); <u>Carvalho v. Town of Westport</u>, 140 F. Supp. 2d 95, 99 (D.Mass., April 09, 2001). Instead, fact issues regarding the truthfulness and accuracy of challenged speech is an issue of fact for resolution at trial. *South* <u>Carolina Ports Authority v. Booz-Allen & Hamilton</u>, 676 F. Supp. 346, 350 (D.D.C. 1987); <u>see also</u> <u>U.S. v. Schiff</u>, 379 F.3d 621, 623-24 (9th Cir. 2004). Simply stated, First Amendment defenses are not properly resolved on the pleadings.

If the Court were inclined to look to the merits of WKH's First Amendment defense, it would find that WKH's inaccurate PEM does not warrant First Amendment protection for several reasons:

First, WKH is responsible for the content of the PEM and so is not merely a "publisher" entitled to First Amendment protection. <u>See</u> <u>e.g.</u> <u>Smith v. Lin</u>, 48 Pa. D. & C. 3d 339 (Pa. Com. Pl. 1988); <u>Jones v. J.B. Lippincott Co.</u>, 694 F. Supp. 1216, 1217 (D. Md. 1988); <u>Lewin v. McCreight</u>, 655 F. Supp. 282, 283 (E.D. Mich. 1987). WKH's argument that it should be extended First Amendment protection as a publisher of information fails for the most basic reason: WKH is not a mere "publisher" of drug information. Plaintiff has clearly alleged that WKH is the *author* of the Zoloft PEM. [Complaint ¶¶ 39-40, 43-45, 121 (a)(b)(g), 127-128, 132,

135.]  As such, WKH is alleged to have controlled the Zoloft PEM's content. This fact alone distinguishes WKH from pure publishing companies that do not author the materials they publish. Unlike a publisher, that generally is not liable for the content of works they publish, an author's liability for errors in the content of the materials the author creates depends on the facts of the case. E.g. Jones v. J.B. Lippincott Co., 694 F. Supp. 1216, 1217 (D.Md. 1988). More specifically, author liability for errors in the content of its writings depends upon (1) the nature of the publication, (2) the intended audience for the information, and (3) causation and foreseeability of damages. Id. at 1216-17. Because WKH controls the content of a mass-produced PEM product that it could foresee would be used (indeed, was intended by WKH to be used) to guide consumers Zoloft use – it is, at least, possible that WKH will be liable for to the intended users for foreseeable harm resulting from the negligently prepared PEM product.

Second, false or misleading statements such as those contained in the PEM are not protected speech.  No less authority than the United States Supreme Court has held that inaccurate statements are not protected by the First Amendment. Central Hudson Gas & Elec. Corp. v. Public Serv. Comm. Of New York, 447 U.S. 557, 562, 100 S.Ct. 2343 (U.S. 1980)("There can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity."). Indeed, Defendants' own cited authorities provide that "commercial speech that is false or misleading is afforded no First Amendment protection at all." Gorran v. Atkins Nutritionals, Inc., 464 F. Supp. 2d 315, 326 (S.D.N.Y. 2006). There is no prohibition against restricting communications that are more likely to deceive the public than to inform it. Id. (citing Friedman v. Rogers, 440 U.S. 1, 15-16, 99 S.Ct.887, 896-97, 59 L.Ed.2d 100 (1979).

Third, Plaintiff is not seeking to enjoin speech; but, rather to recover damages. Plaintiff has not sought an injunction attempting to restrain or abridge Defendants' "speech" in this action. Instead, Plaintiff's Complaint sets forth various theories of liability against WKH and seeks compensation for WKH's negligence and other wrongdoing. As explained in Norwood v. Soldier of Fortune Magazine, when a plaintiff is not seeking to enjoin speech but is instead requesting damages as a consequence of the "speech" at issue, the First Amendment is not implicated. 651 F. Supp. 1397, 1402 (W.Dist. Ark. 1987). The First Amendment is also not implicated because it is not an exemption from generally applicable common law. See Cohen v. Cowles Media Co., 501 U.S. 663, 111 S.Ct. 2513, 115 L.Ed. 2d 586 (1991). Accordingly, WKH cannot prove fraudulent joinder merely by invoking the First Amendment.

Fourth, the "speech" at issue is of a type that has been held not to warrant First Amendment protections. While WKH is correct in its assertion that book publishers generally are not liable for the content of the volumes they publish, WKH omits to mention that the First Amendment does not shield: (1) publishers of instructional charts and manuals, and (2) negligent preparers of reports based on objective data. The rationale for treating these two categories of informational materials -- both of which are analogous to PEMs -- differently from books or periodicals is highly instructive in the present case.

Instruction manuals and aviation charts have been found to support a claim for strict products liability. See, e.g., Jackson v. Baldwin-Lima-Hamilton Corp., 252 F. Supp. 529 (E.D. Pa. 1966)(holding that errors in instruction manuals accompanying products can support a claim under a strict liability theory); Brocklesby v United States, 767 F.2d 1288, 1294-98 (9th Cir. 1985)(holding that defendant could be liable for defects in instrument approach procedure

included on a flight chart); <u>Saloomey v. Jepperson & Co.</u>, 707 F.3d 671, 676-77 (2nd Cir. 1983)(holding strict liability claim would like for defective aeronautical chart).

Courts have also recognized the possibility of liability for negligent misstatements involving compilations of factual data. In <u>South Carolina State Ports Authority v. Booz-Allen & Hamilton, Inc.</u>, a large management-consulting firm was sued for negligently preparing a report comparing the Ports of Savannah, Georgia and Charleston. 676 F. Supp. 346 (D.D.C. 1987). The report was alleged to contain misleading, false, and damaging information. The defendant firm asserted a First Amendment defense. In rejecting the First Amendment defense, the court observed that the defendant's report consisted of "objective factual data," which "because of the greater objectivity and hardiness of commercial speech" did not require the protection of the First Amendment. <u>Id</u>. at 350 ("When the speech at issue revolves around fact, not opinion, the first amendment concerns, though still existent, are diminished").

The holdings and rationales in <u>South Carolina</u>, <u>Jackson</u>, <u>Brocklesby</u>, and <u>Saloomey</u> are easily transferable to the context of PEMs. First, like the <u>South Carolina</u> report or the aeronautical charts, the data which forms the content base of the PEM consists of objective, verifiable facts, drawn from FDA approved labeling and the existing body of medical knowledge. Such data is objective in nature, and so, less in need of First Amendment protection. Second, the concerns that normally drive First Amendment protections – namely the practical inability of publishers to guarantee the accuracy of wide-ranging publications – does not apply where the defendant controls the informational content. Third, unlike a newspaper article, for example, which adds to the overall store of knowledge and encourages discussion and the dissemination of new ideas, a PEM merely takes existing expert knowledge and drug information and makes it more widely available and more easily accessible. While inhibiting the

development PEMs by raising the specter of liability may be undesirable, *this undesirability does not arise from First Amendment concerns.* If a newspaper article is suppressed, society will be deprived of a principle medium for the dissemination of information, and thus will be worse off for its suppression. If an expert system is suppressed, by contrast, the knowledge would still be available through the study results and on the product label. Indeed, if a PEM providing only inaccurate and incomplete information supplants the more extensive label, society is arguably worse off than if the negligently produced PEM was never offered. In sum, while First Amendment concerns may be important in the area of publisher liability generally, the special nature and function of PEMs makes First Amendment concerns in that area unwarranted.

## H. THE REMOVING DEFENDANTS' CONCEALMENT OF ZOLOFT'S RISKS DOES NOT PRECLUDE ALL POSSIBILITY OF LIABILITY ON THE PART OF WKH.

The Removing Defendants urge that WKH cannot be liable for not including information in its PEM when Plaintiff's Complaint also includes allegations that the Removing Defendants' did not disclose Zoloft's risks. There are several flaws in this argument. First and foremost, there is absolutely no basis for believing that WKH was deprived of the readily available Zoloft package insert when preparing its PEM. Yet, even though the warning label put forth by the Removing Defendants was woefully inadequate to warn medical providers and consumers of the risk of congenital birth defects – WKH did not even include the minimal birth defect information readily available in the Zoloft PEM. That is, WKH made the decision to further obscure the danger of congenital birth defects by omitting various statements and warning that were contained in the package insert. This act alone raises, at least, the possibility that WKH may be found liable for its negligent conduct. [See Relevant Procedural and Factual Background *supra* at II, ¶ 7].

31

Second, unlike a pharmacy, WKH maintains its own database and performs (and even touts) its own studies. Wolters Kluwer Pharma Solutions, *Source Lx Custom Analytics*, p. 1 [Wolters Kluwer Health, Inc. 2010 (Exhibit "C")]. Thus, WKH had a means to know of Zoloft's dangers other than reliance on Pfizer. At the very least, WKH represents its PEMs as something more than a written mouthpiece for Pfizer. For instance, WKH claims that its drug information is "comprehensive" and "unbiased." The obvious implication of WKH's statement is that it looks objectively at sources other than just the manufacturer's representations. It is entirely possible that a Pennsylvania court could find WKH liable both for its own research failures regarding Zoloft and for its failures to properly weigh and consider the sources of information that were available regarding Zoloft.

Third, Pennsylvania, like most jurisdictions, expressly provides for and permits alternative theories. Pa.R.C.P. 1020(c). While Plaintiff does not believe his allegations to be inconsistent, even if they were, the mere fact that Plaintiff alleges that Removing Defendants concealed information regarding Zoloft's risks, does not defeat all possibility that Plaintiff will prevail under a separate and alternative count against WKH.

For each of these reasons, the Removing Defendants' claim that WKH is categorically excused from liability due to the drug maker's concealment must be denied. That the Removing Defendants were less than forthcoming with information regarding Zoloft's defects does not preclude a finding of liability against WKH under the theories alleged in this case.

## I.   THE REMOVING DEFENDANTS' URGING OF FACTUAL GROUNDS FOR DEFEATING PLAINTIFF'S CLAIMS ARE NEITHER APPROPRIATE NOR INSTRUCTIVE ON A MOTION TO REMAND INQUIRY.

The Removing Defendants argue that Plaintiff's allegations about Defendants' failure to warn are contrary to the plain language of the WKH's Zoloft monograph. [Notice of Removal ¶

33, 34.]   Such argument is without merit.  Any argument regarding the accuracy and adequacy

of the warnings provided in the Zoloft PEM is a merits-based factual determination wholly

inappropriate for determination on a motion to remand inquiry.  See Robinson, Memorandum,

No. 11-5702, 2011 U.S. Dist. LEXIS 138597 at *26.

## J.  PLAINTIFF HAS ADEQUATELY ALLEGED RELIANCE UPON WKH'S PEM.

In their Notice of Removal, the Remanding Defendants erroneously state that the WKH

was fraudulently joined because Deidra Long never alleged that she read or relied on the Zoloft

monograph, which Plaintiff was provided when she filled her Zoloft prescription at Walgreen's

Pharmacy.  [Notice of Removal ¶ 35, 39]  As alleged in the Complaint,

> "At the time Deidra Long's Zoloft prescription was filled, she
> received and read prescription drug information, labels patient
> education monographs, patient inserts, warnings and literature
> regarding Zoloft that was authored, analyzed, created, compiled,
> designed, drafted, disseminated, distributed, edited, evaluated,
> marketed, published and supplied by Wolters Kluwer."

[Complaint ¶ 136]

> "Deidra Long's, her physicians', and her pharmacists' reliance
> upon Wolters Kluwer's material misrepresentations and/or
> omissions was justified, among other reasons, because said
> misrepresentations and omissions were made by individuals and
> entities who were in a position to know the true facts concerning
> Zoloft...."

[Complaint ¶153]

> "In particular, Deidra Long, her physicians, and her pharmacists
> relied upon Wolters Kluwer's representations and omissions
> concerning the risk of congenital birth defects associated with
> Zoloft use during pregnancy."

[Complaint ¶ 159}

> "Instead, Deidra Long relied upon the negligently prepared
> prescription drug information, labels, patient education

monographs, patient inserts, warnings, and literature to Hudson
Long's detriment."

[Complaint ¶ 124]

The clear import of these allegations (and other similar allegations) is that Plaintiff Deidra Long

read and relied upon the patient information prepared and provided by WKH.   Thus, the

Removing Defendants' claim that Plaintiff failed to allege reliance is simply false.

## V.    CONCLUSION

There is at least a possibility that a Pennsylvania court would find that WKH bore a duty

to exercise reasonable care in its undertaking to provide patient drug information that WKH itself

professed would bear certain characteristics and adhere to industry guidelines.   For these reasons,

WKH was not fraudulently joined and this Court has no jurisdiction in this matter.   Plaintiff

respectfully requests that the Court grant Plaintiff's Motion to Remand and remand this case to

the Pennsylvania state court from which it was improperly removed.

Dated:  June 14, 2012                          Respectfully Submitted,

By: _____
**GREGORY S. SPIZER, ESQUIRE**
ID No. #82435
ANAPOL, SCHWARTZ, P.C.
1710 Spruce Street
Philadelphia, PA 19103
Phone: 215-735-1130
Fax: 215-875-7707
Email: gspizer@anapolschwartz.com

**W. ROGER SMITH, III, ESQUIRE**
BEASLEY ALLEN
218 Commerce Street
Montgomery, AL 36104
Phone: 800.898.2034
334.269.2343
334.954.7555 fax
Email:  Roger.Smith@BeasleyAllen.com

*Attorney for Plaintiff*

34

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 14, 2012, I electronically filed the foregoing with the Clerk of

the Court using CM/ECF, which shall send notification of such filing to all CM/ECF participants.

**GREGORY S. SPIZER, ESQUIRE**